UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| FUNDS IN THE AMOUNT OF | ) | Judge |
| $20,040 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by John R. Lausch, Jr., United States Attorney for the
Northern District of Illinois, for its verified complaint against the above-named defendant funds
alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as
follows:

**Nature of the Action**

1.　　This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture
of the defendant funds in the amount of $20,040 United States currency.

2.　　This complaint is verified by the attached affidavit of Drug Enforcement
Administration ("DEA") Task Force Officer M. Ronald Brunzie ("TFO Brunzie"), which is fully
incorporated herein.

**Jurisdiction and Venue**

3.　　This Court has jurisdiction over an action commenced by the United States as the
plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. §
1355(a).

4.     This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5.     Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found within the Northern District of Illinois.

6.     The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for illegal drugs; and/or (ii) are the proceeds from the sale of illegal drugs; and/or (iii) were funds used and intended to be used to facilitate illegal drug trafficking, in violation of 21 U.S.C. § 841, *et seq.*

**Factual Allegations**

7.     On October 2, 2017, DEA law enforcement officers assigned to the DEA Chicago Interdiction Group ("DEA Group") at Midway International Airport in Chicago, Illinois, were alerted to the suspicious travel itinerary of Gregory Ray ("Ray").

8.     Specifically, Ray was traveling alone with one checked bag and was traveling from Chicago, Illinois to Los Angeles, California aboard Southwest Airlines flight number 1617. Ray's ticket was purchased by a third-party less than 24 hours prior to departure.   The agents were also aware that both Ray and the third-party had several previous drug arrests.

9.     Based upon his training and experience, the affiant states that drug proceed couriers often purchase one-way tickets, travel alone and buy the tickets a day or so prior to the scheduled departure. Additionally, the affiant states that Los Angeles, California, is a known source area for drug trafficking. Further, based upon the affiant's training and experience, those who transport

2

illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or accompanying bags or suitcases. Based upon the above information, DEA agents sought to interview Ray while he was at Chicago's Midway Airport enroute to Los Angeles, California.

10. On October 2, 2017, at approximately 5:33 p.m., Special Agent Luis Mendez and TFO Brunzie went to Gate A-19 for the purpose of interviewing Ray. At the time, the agents were dressed in casual civilian attire, with no weapons, radios or other police paraphernalia visible.

11. Shortly after arriving at the gate, SA Mendez and TFO Brunzie approached an individual, later confirmed to be Gregory Ray, and identified themselves to him by displaying credentials and a badge, requesting to speak to him. At the time, after inspecting the agents credentials and badges, and being advised he was not under arrest, was free to leave, nor in any trouble, Ray agreed to talk to the agents.

12. Initially, TFO Brunzie asked Ray for a form of identification and his boarding pass. Ray produced an Illinois Identification card bearing his name and photo likeness and his boarding pass. TFO Brunzie noted the information and handed the documents back to Ray.

13. TFO Brunzie then asked Ray about his travel itinerary. Ray stated he was traveling to Los Angeles to visit a friend's cousin who was then taking him to Las Vegas to gamble. Ray was asked how long he was staying in Los Angeles, and he replied two days. TFO Brunzie asked Ray where he would be staying while in Los Angeles. Ray responded with his "friend" but provided no further details.

14. TFO Brunzie observed that Ray had no carry-on luggage with him and asked Ray if he were traveling alone. Ray replied yes. TFO Brunzie asked Ray if he checked-in luggage with Southwest Airlines. Ray stated he had one checked-in bag. When TFO Brunzie asked Ray

if he had packed his luggage himself, Ray acted nervous by stepping back away from the agents and replied "yes". Ray further stated that his friend,"Yaphett," had booked his ticket. At the time, agents were aware that this third-party, Yaphett E. Broils ("Broils"), had numerous aliases and convictions for drug offenses in Cook County Illinois.

15. Ray was asked if he had any drugs or electronics on him or in any of his luggage. Ray stated he did not have any drugs, but had a cell phone. When TFO Brunzie asked Ray if he had any large amounts of currency on him or in his luggage, Ray stated that he had $9,000 in his checked bag. When asked why he was carrying so much money, Ray stated it was for gambling in Las Vegas.

16. When TFO Brunzie asked Ray about the source of the money, Ray said he had been saving it and that it had not been withdrawn from a bank recently. Ray further stated the cash was hidden inside three socks in the bag. When asked what he did for employment, Ray stated he worked part-time at a Shell gas station in Calumet City, Illinois, for the past year.

17. At the time, TFO Brunzie asked Ray for consent to search his bag to verify his statements. Ray stated, "Yes, go right ahead." Ray later reaffirmed his consent by signing a DEA Consent to Search form. *See* Exhibit A.

18. TFO Brunzie then thanked Ray for his cooperation and advised him that agents would check his bag. TFO Brunzie further explained to Ray that if agents found more than the amount he told them, that they would come back to talk with him again. Ray told agents, "I always cooperate with the police. I have nothing to hide." Ray then informed agents that he would be at a restaurant.

4

19.     A short time later, TFO Ruiz located Ray's green duffel bag that had a Southwest tag with Ray's name on it.   TFO Ruiz did the initial search of the bag and located at least three socks containing large amounts of cash.

20.     Subsequently, TFO Brunzie and SA Mendez took possession of Ray's duffel bag and brought it back to the DEA office at Midway to search it more thoroughly.   Once there, agents discovered a total of five socks containing bundles of cash.   *See* Exhibit B.

21.     DEA agents then brought Ray's bag to the area of Gate A-19 where TFO Brunzie approached Ray and requested to speak with him again.   Ray agreed to again speak with the DEA agents.

22.     TFO Brunzie asked Ray to confirm the real amount of cash in his bag.   Ray now stated he had $19,000 in the bag.   When TFO Brunzie asked Ray why he provided false statements to the agents initially, Ray stated that that he used to work at a bank and knew he would have to declare if he was in possession of more than $10,000.   TFO Brunzie then asked Ray if he attempted to conceal the cash so he did not have to declare it.   Ray did not give an answer.

23.     TFO Brunzie then asked Ray again about the source of the cash.   This time, Ray stated that he had cashed in his 401k in September 2016 but did not have any paperwork with him. Ray further explained that the 401k was originally $25,000, but that he had to pay a fee for withdrawing it early.   Ray then stated that he had worked for AT&T as a customer service representative from 1995 to 2012.

24.     At the time, TFO Brunzie informed Ray that he was not under arrest, but the cash was going to be detained for further investigation.   When asked if he wanted to accompany the agents to the DEA Midway office to obtain a receipt for the seized currency, Ray agreed.

5

25.     Subsequently, while in the DEA office, TFO Brunzie asked Ray for further clarification about the source of the cash.    Ray stated he cashed in his 401k last September 2016 and withdrew it from a bank in 2016.    Ray would provide no further details where he had kept the cash since 2016.    When SA Mendez asked Ray if the bank had issued him the $19,000 in $20 bills, Ray laughed and said that during the previous year he had withdrawn $4,000 from the bank which was in $100 denominations.    When asked if the $4,000 he withdrew was given to him in $20 denominations, Ray stated that he accumulated the $20 bills while spending the $4,000. When SA Mendez challenged Ray that his statements did not account for the remaining $15,000 in $20 bills, Ray did not respond.

26.     On October 2, 2017, Amtrak Police Officer Crowley and his canine "Gander," conducted a drug odor investigation on the currency recovered from Ray's duffel bag.    Gander gave a positive alert to the presence of a drug odor from the seized currency.

27.     Gander is owned by Amtrak and was last certified before this investigation on January 13, 2017 by the State of Illinois. Gander was certified in the detection of drug odors including cocaine, heroin, methamphetamine, marijuana and ecstasy.

28.     In total, $20,040 in United States currency was recovered from Ray in the following denominations: 1 fifty dollar bill, 989 twenty dollar bills and 21 ten dollar bills.

29.     For the reasons stated herein and in the attached affidavit, the defendant funds in the amount of $20,040: (i) were monies furnished and intended to be furnished in exchange for illegal drugs; and/or (ii) are the proceeds from the sale of illegal drugs; and/or (iii) were monies used or intended to be used to facilitate an illegal drug transaction in violation of 21 U.S.C. § 841, *et seq*., and therefore are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

6

WHEREFORE, the United States of America requests:

        a.      the defendant funds be proceeded against for forfeiture and condemnation;

        b.      due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

        c.      this court adjudge and decree that the defendant funds be forfeited to the United States and disposed of according to law; and

        d.      any trial be before a jury.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By: s/Daniel E. May_____
    DANIEL E. MAY
    Assistant United States Attorney
    219 South Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    (312) 353-8694
    daniel.may@usdoj.gov

STATE OF ILLINOIS        )
                         )  SS
COUNTY OF COOK           )

## AFFIDAVIT

M. RONALD BRUNZIE, being duly under oath states as follows:

1.      I am a Task Force Officer with the Drug Enforcement Administration and have been so assigned since 2014.    My duties and responsibilities as a Task Force Officer with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.   I am also a police officer with the Lockport, Illinois Police Department and have been so employed for approximately 22 years.   As part of my duties as a Lockport police officer, I have been assigned for several years as a tactical officer involved in investigations of the Illinois Controlled Substance Act and the Cannabis Control Act.

2.      I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge, information, and belief based upon my own personal knowledge as well as information I have received from other sources.   Because this affidavit is for the limited purpose of establishing that this property is subject to forfeiture, it does not include each and every fact known to me concerning this investigation or the conversations described therein.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___31___ day of January 2018, in Chicago, Illinois.

M. RONALD BRUNZIE
Task Force Officer
Drug Enforcement Administration

U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

**CONSENT TO SEARCH**

1.  I HAVE BEEN ASKED TO PERMIT SPECIAL AGENTS OF THE DRUG ENFORCEMENT
    ADMINISTRATION TO SEARCH: (Describe the person, places or things to be searched.)

    — The Person of Greg Ray
    — Green Versace Parfums duffel Bag

2.  I HAVE NOT BEEN THREATENED, NOR FORCED IN ANY WAY.

3.  I FREELY CONSENT TO THIS SEARCH.

_10-2-17_
Date

Signature

Witnesses: TFO

SA Luis Mendez

Previous edition dated 3/76 is Obsolete.

GOVERNMENT
EXHIBIT
A



GOVERNMENT
EXHIBIT
B